United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Hassan Mohamed Farah, Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| Michael W. Meade, Field Office Director, Miami Field Office, U.S. Immigration and Customs Enforcement, and others, Respondents. | ) Civil Action No. 20-22074-Civ-Scola ) ) ) ) ) |

### Order Denying Petition

Petitioner Hassan Mohamed Farah has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Pet., ECF No. 1). Farah contends his continued detention, in Immigration and Customs Enforcement custody, violates his due process rights under the Fifth Amendment. (Pet. at ¶ 1.) In response, the Government argues Farah's detention is governed by 8 U.S.C. § 1231 and is statutorily permitted and lawful under the Fifth Amendment. (Gov't's Ret. 5, ECF No. 13.) After review, the Court agrees with the Government and denies Farah's petition, dismissing his case, without prejudice, as prematurely filed.

1. **Background and Procedural History**[1]

Farah is currently detained at the Krome Detention Center in Miami, Florida. He is a native and citizen of Somalia but has lived in the United States since entering in 1996, as a refugee, when he was sixteen. Farah is married to a United States citizen and has nine children, ranging in age from six to twenty-one.

In 2004, Farah was convicted of fleeing from and assault on a police officer, in Minnesota. Based on that conviction, Farah was sentenced to a year and a day in prison. As a result of these convictions, Farah was thereafter taken into ICE custody, on November 27, 2006, having been served with a notice to appear, charging him with removability under 8 U.S.C. § 1182(a)(2)(A)(i), as an alien who has been convicted of a crime involving moral turpitude, and 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who is not in possession of a valid entry document. In December 2006, an immigration judge ordered

---

[1] Unless otherwise noted, the facts set forth below are undisputed.

him removed to Somalia. Thereafter, in June 2007, Farah was released on an order of supervision.

Over ten years later, on October 16, 2017, Farah was taken into ICE custody and, on December 7, 2017, was placed on a chartered deportation flight to Somalia. The plane spent two days in the air and on the ground in Senegal, before returning to the United States. For the purposes of the instant motion, the Government does not dispute Farah's description of the deplorable conditions suffered by the detained passengers on that flight: for the duration of the trip, the detainees were restrained in five-point shackles and not allowed to move, sleep, or use the bathroom. Farah is now a part of a class action, filed in federal court in this district, related to that flight. *Ibrahim v. Acosta*, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018) (Gayles, J.).

While the class action litigation was pending, Farah filed a motion to reopen his removal proceedings with the immigration court. In July 2018, the immigration judge granted his motion and allowed Farah to pursue relief from removal. Upon the reopening of his case, ICE amended Farah's notice to appear to include the following additional criminal convictions: a December 2008 conviction for interfering with a 911 call; and 2015 convictions for second-degree assault and fifth-degree drug possession. Although Farah maintains, in his traverse, that he disputes the Government's claim that he was afforded a bond hearing, in his petition he also says his counsel "obtained the audio recording of the bond hearing . . . but has been unable to obtain transcription." (Pet. at ¶ 6 n. 2.) In his petition he also says the immigration judge "refused to consider bond . . . as Mr. Farah was subject to mandatory detention pursuant to 8 U.S.C. §1226(c)." (*Id.* at ¶ 6.) According to the Government, on August 9, 2018, an immigration judge denied bond, "finding [Farah] subject to mandatory detention and also a danger to the community." (Ret. at 3.)

Regardless, in a written order, dated October 30, 2018, the immigration judge denied Farah's application for relief and ordered him removed to Somalia. Farah appealed the decision to the Board of Immigration Appeals which dismissed the appeal on May 30, 2019. Immediately thereafter, the Government initiated the process of obtaining a new travel document for Farah, which Somalia issued in October 2019. ICE then scheduled Farah for a removal flight to Somalia in December 2019.

In the meantime, Farah filed a petition for review with the United States Court of Appeals for the Eleventh Circuit, challenging the BIA's May 30, 2019, final removal order. Farah says he sought a stay of his removal from the Eleventh Circuit, on July 3, 2019, which he claims was denied "[a]fter ICE represented that it had no plans to remove" him. (Pet. at ¶¶ 10, 41.) As the date of his scheduled flight drew near, however, Farah filed another motion for a

stay of removal, this time on an emergency basis. The Eleventh Circuit granted the stay on December 3, 2019. Farah filed the instant petition on May 18, 2020. Farah's stay and appeal to the Eleventh Circuit remain pending.

### 2. Analysis

Farah complains that under either 8 U.S.C. § 1226 or 8 U.S.C. § 1231, his prolonged detention, since October 2017, violates the due process clause of the Fifth Amendment, "particularly in light of his meritorious arguments against removal on appellate review, his current stay of removal, and the unlikely possibility of future removal." (Pet. at ¶¶ 16, 34.) The Government counters Farah's detention is governed solely by 8 U.S.C. § 1231, based on Eleventh Circuit precedent, and that his prolonged detention, under the facts of this case, is not unreasonable. The Court finds no reason to depart from the Eleventh Circuit's indication that § 1231 applies in this context and that Farah's request for a stay has interrupted his detention period.

The Eleventh Circuit, in *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002), applied § 1231 to a situation analogous to Farah's: where a detainee had sought a stay of removal while simultaneously challenging his removal order in the appellate court and seeking § 2241 relief in the district court. The *Akinwale* opinion also found that the running of the clock for removal is "interrupted" when a detained alien seeks a stay of his removal. *Id.* Until or unless the Eleventh Circuit directs otherwise, the Court follows this framework. *See Thompson v. Horton*, 419CV00120AKKHNJ, 2019 WL 4750072, at *1 (N.D. Ala. Sept. 30, 2019) (recognizing that "many district courts within the Eleventh Circuit, as well as several unpublished Eleventh Circuit opinions, have treated *Akinwale*'s use of § 1231 and footnote 4 as precedent").

Under § 1231, then, the Attorney General is afforded a ninety-day period to effectuate removal following the entry of a final order of removal. 8 U.S.C. § 1231(a)(1)(B). Detention is mandatory during this ninety-day period. 8 U.S.C. § 1231(a)(2). This removal period may be extended, beyond the ninety days, while the alien remains detained, "if the alien . . . acts to prevent [his] removal." 8 U.S.C. § 1231(a)(1)(C). Further, under various listed circumstances, the Attorney General may continue to detain an alien after the expiration of this ninety-day removal period as well. 8 U.S.C. § 1231(a)(6).

Under the United States Supreme Court's ruling in *Zadvydas*, § 1231(a) authorizes detention for a period reasonably necessary to accomplish an alien's removal. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). To that end, the court in *Zadvydas* determined that ICE maintains the authority to continue detention where the detention fairly aids the government in its legitimate efforts to remove individuals with final orders of removal. *Id.* at 701. This continued

detention, under *Zadvydas*, is presumptively reasonable if it does not extend beyond six months. *Id*. Once the six months has lapsed, however, and "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must [then] respond with evidence sufficient to rebut that showing." *Id.*; *see also Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

Farah acknowledges seeking a stay, before the Eleventh Circuit, of his removal on July 3, 2019, which, he says, was denied when the Government represented it had no pending plans, at that time, to remove him. (Pet. at ¶ 10.) Thereafter, on November 25, 2019, when the Government apparently shifted course and Farah's removal was imminent, Farah sought, on an emergency basis, another stay. The Eleventh Circuit granted the stay on December 3, 2019. Farah does not dispute that his removal would likely have occurred, in December 2019, but for his decision to file an emergency motion to stay his removal.

Based on this sequence of events, the Court finds, under *Akinwale*, Farah "interrupted" the running of the six-month clock when he sought a stay on July 3, 2019. *Akinwale*, 287 F.3d at 1052 n. 4 (finding a detainee had "interrupted the running of time under *Zadvydas* by moving . . . for a stay of deportation in his prior appeal"); *see also Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) (finding "[t]he six-month period is tolled . . . if the alien acts to prevent his removal"); *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (noting the petitioner "interrupted the running of time under *Zadvydas* when he simultaneously challenged issues related to his removal order and his post-removal period detention") (cleaned up).[2] Or, if the clock was not "interrupted," Farah prevented his timely removal when, on November 25, 2019, he sought an emergency stay when his removal appeared imminent. Until the stay Farah himself requested is lifted, ICE's continued detention of him, pending his removal, without more, cannot be considered a denial of due process. *See, e.g., Evangelista v. Ashcroft*, 204 F. Supp. 2d 405, 409 (E.D.N.Y. 2002) (noting the petitioner was "not being held indefinitely beyond the removal period," but instead was "being held pursuant to a stay . . . he ha[d] requested"); *Barua v. Aviles*, CV 15-3768 (ES), 2016 WL 4161099, at

---

[2] The Court uses (cleaned up) to indicate that internal quotation marks, alterations, or citations have been omitted from quotations. *See, e.g., Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1285 (11th Cir. 2020).

*3 (D.N.J. Aug. 4, 2016) (holding "where an alien's challenge to a removal order prevents his removal, *Zadvydas'[s]* presumptively reasonable six-month period is tolled"); *Jackson v. Johnson*, 3:15-CV-2046, 2015 WL 6501304, at *2 (M.D. Pa. Oct. 27, 2015) (finding a petitioner's "continued detention," under § 1231, "not in violation of his due process rights as long as his removal is reasonably foreseeable" while noting the petitioner had "provided no evidence that ICE or the Department of Homeland Security will be unable to remove him within a reasonable time *following the resolution of his petition for review*") (emphasis supplied here).

### 3. Conclusion

Accordingly, after careful consideration of the filings and record in this case, the Court **denies** Farah's petition for a writ of habeas corpus and **dismisses** this case, **without prejudice**. Accordingly, the Court **denies as moot** Farah's motion for an expedited hearing (**ECF No. 15**). The Court also denies Farah's request for discovery: this request was improperly inserted within Farah's traverse (ECF No. 14) and, in any event, is mooted by the Court's ruling.

The Clerk is directed to **close** this case. The Court also **denies as moot** any other pending motions.

**Done and ordered**, in chambers at Miami, Florida, on July 15, 2020.

Robert N. Scola, Jr.
United States District Judge